IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 05 C 3812 |
| MICHAEL LINDER, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Secretary of Labor Elaine Chao brought this action against defendants Michael Linder, Joseph/Anthony & Associates, Inc. ("JAA"), Liz/Mar and Associates, Inc. ("Liz/Mar"), and various other pension and health and welfare plans, and their trustees, for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[1] Specifically, plaintiff alleges fiduciary breaches in violation of various subsections of ERISA, including sections 404, 405, 406, 408, and 502.[2] Defendants Linder's and JAA's jointly filed answer asserted seven affirmative defenses and defendant Liz/Mar's answer asserted six affirmative defenses. Plaintiff now brings this motion to strike three of Linder's and JAA's asserted affirmative defenses and three of Liz/Mar's asserted affirmative defenses pursuant to FED. R. CIV. P. 12(f). For the reasons stated below, we grant in part and deny in part plaintiff's motions to strike.

---

[1] Although there are many named defendants in this action, this motion is only relevant to defendants Michael Linder, JAA, and Liz/Mar. Therefore, the term "defendants," as used in this opinion, will refer only to those three defendants.

[2] In order to maintain consistency with parties' briefs, citations to the ERISA statute will take the form of "section 401," adhering to the usual practice of referring to the internal section numbers rather than to the Title 29 numbering. The formal section numbering for the cited subsections is 29 U.S.C. §§ 1104, 1105, 1106, 1108, and 1132, and may appear as such in our citations to other courts.

## BACKGROUND

Plaintiff brought this action against the aforementioned defendants and several collectively-bargained multi-employer pension and health and welfare plans, along with several plan trustees and administrators, for violations of ERISA. The complaint describes JAA as "a fiduciary and party in interest" to the various plans, due to its role as a "third party plan administrator and plan consultant" (cplt., ¶ 5). In its role as fiduciary and consultant, JAA, under the guidance of its president, Michael Linder, controlled the assets of the Local 136 Plans, the Local 380 Retirement Plan, the Local 498 Plans, and the Local 18 plans. JAA also acted as a paid investment advisor for Local 498 Defined Benefit Plan and managed the East Central Pension Plan, the Local 18 Plans and the Local 218 Plans (*id.* at ¶ 6). Liz/Mar, located at the same address as JAA and run by Linder's wife, defendant Elizabeth Linder, received fees negotiated by JAA as a result of investments made by the ERISA plans for which JAA acted as a third party administrator or consultant.

According to the complaint, JAA and Liz/Mar entered into agreements with various insurance and investment companies (including Nationwide Insurance Company and Pan American Life Insurance Company), by which the ERISA plans invested in variable group annuity contracts. Under those agreements, the insurance companies paid JAA and/or Liz/Mar fees and commissions. Additionally, the various ERISA plans' investments with securities firms (including LaSalle Street Securities, Inter Securities, and Gartmore Trust Company) resulted in brokerage fees to Liz/Mar and JAA. JAA also allegedly deducted fees from the ERISA plans for payment of stop loss insurance premiums, death benefit insurance premiums, travel and other expense payments to its employees, and a loan to itself, without the approval of the board of trustees. Finally, Plan Trustees Schreier and Kisting accepted $19,000 motorcycles from Linder to influence their actions with respect to the Local 136 and

Local 498 Defined Benefit and Defined Contribution Plans. Plaintiff alleges that such conduct – mostly uncontested by defendants – was taken in violation of defendants' fiduciary duties under ERISA. Thus, plaintiff seeks to permanently enjoin the defendants from violating the provisions of Title I of ERISA; require defendants to restore to the ERISA plans all losses incurred as a result of breaches of fiduciary duty; disgorge all ill-gotten gains; correct the prohibited transactions; and permanently enjoin defendants from serving as fiduciaries or service providers to any ERISA-covered employee benefit plan.

This opinion addresses plaintiff's motion to strike a number of Linder's, JAA's, and Liz/Mar's affirmative defenses. Because Liz/Mar's liability, if any, is derivative of Linder's and JAA's liability, Liz/Mar adopted the arguments made by Linder and JAA in their response to plaintiff's motion. Therefore, we will treat their arguments as one.

## DISCUSSION

### Legal Standard

Under Rule 12(f), the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendants rightly contend that motions to strike are not generally favored because they can delay judicial proceedings. Dixon v. Americall Group, Inc., 390 F.Supp.2d 788, 790 (C.D.Ill.2005); Anderson v. Board of Education of City of Chicago, 169 F.Supp.2d 864, 867 (N.D.Ill.2001); U.S. v. City of Fairview Heights, Ill., 132 F.Supp.2d 684, 687 (S.D.Ill.2000). Where, however, striking an affirmative defense can serve to expedite a case by ridding it of "unnecessary clutter," courts will strike them. Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir.1989); Marina Bartashnik v. Bridgeview Bancorp, Inc., 2005 WL 3470315, *1 (N.D.Ill.2005).

In reviewing a motion to strike an affirmative defense, we apply a three-part test to

assess the sufficiency of the proposed defense. The matter must "be properly pleaded as an affirmative defense; it must comply with Rules 8 and 9; and it must withstand a Rule 12(b)(6) challenge." Marina Bartashnik, 2005 WL 3470315, at *1. *See also* Chronister v. Superior Air/Ground Ambulance Service, Inc., 2005 WL 3019408, *2 (N.D.Ill.2005); Bobbitt v. Victorian House, Inc., 532 F.Supp. 734, 737 (N.D.Ill.1982). Therefore, an affirmative defense can be struck if the plaintiff can show that the defendant cannot possibly prove a set of facts under the affirmative defense that would defeat the complaint. National Accident Ins. Underwriters, Inc. v. Citibank, FSB, 333 F.Supp.2d 720, 723 (N.D.Ill.2004).

Reasonable Compensation Exception

Linder's and JAA's fourth and fifth affirmative defenses, and Liz/Mar's third and fourth affirmative defenses, assert, in slightly varied language, that any fees paid to them were reasonable compensation in return for services rendered to or on behalf of the ERISA plans. Such defenses invoke ERISA § 408, which provides exemptions from prohibited transactions, including exemptions for receipt of reasonable fees or compensation for services provided on behalf of an ERISA plan. Specifically, § 408(b)(2) states: "The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions: (2) Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." Additionally, § 408(c)(2) states: "Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from – (2) receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan; except that no person so serving who already received full-time pay from an employer or an association of employers, whose employees are participants in the plan, or from an employee

organization whose members are participants in such plan shall receive compensation from such plan, except for reimbursement of expenses properly and actually incurred."

Plaintiff moves to strike the affirmative defenses invoking the § 408 exemption, arguing that the exemption applies only to violations of § 406(a), not violations of § 406(b). Therefore, plaintiff suggests that because she did not charge defendants with violation of § 406(a) – limiting her § 406 claims to § 406(b) – the § 408 exemption is inapplicable to this action. Plaintiff's argument has one major stumbling block – she did charge defendants with violations of § 406(a) in addition to violations of § 406(b). Specifically, Counts VI and VII charge JAA with unauthorized disbursement of travel and expense payments to its employees, in violation of § 406(a)(1)(D), and Count VIII charges JAA with disbursement of a loan to itself, in violation of § 406(a)(1)(B). Because Linder performed the fiduciary functions on behalf of JAA, and Liz/Mar is charged with derivative liability for the actions of Linder and JAA, Counts VI, VII, and VIII charge all relevant defendants with violations of § 406(a).

Plaintiff's argument is therefore confusing. Based on her brief, it appears that plaintiff's argument centers on the payment of fees (violations of § 406(b)) versus reimbursements and loans (violations of § 406(a)). Our reading of § 408(b)(2)'s allowance for "contracting or making reasonable arrangements," however, could be read to include more than solely straight fees, but also reasonable arrangements such as reimbursements and loans. Additionally, we read § 408(c)(2) to clarify and define § 408(b)(2) (see discussion *infra*), and § 408(c)(2) specifically allows for "the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan." The allegations in Counts VI, VII, and VIII could reasonably be read to fall into the definitions of § 408(b)(2) and/or § 408(c)(2). As we act within a notice pleading regime, we do not require plaintiff to assert further facts to clarify her intentions at this time. That means, however, that defendants' affirmative

defense as against Counts VI, VII, and VIII cannot be dismissed at this point.

We now turn to the question of whether defendants' § 408 defenses can also serve as proper defenses to the allegations of § 406(b) violations. From the plain language of the statute it is clear that § 408 provides exemptions only for actions arising under § 406 and conforming to the requirements of § 408. *See also* LaScala v. Scrufari, 96 F.Supp.2d 233, 238 (W.D.N.Y.2000); L.I. Head Start Child Development Services, Inc. v. Frank, 165 F.Supp.2d 367, 370 (E.D.N.Y.2001). It is unclear, however, whether § 408 covers both § 406(a) and § 406(b) violations. Although the Seventh Circuit has yet to address this question, other courts generally have held that the § 408(b)(2) exemption only covers actions arising out of § 406(a), not § 406(b). Patelco Credit Union v. Sahni, 262 F.3d 897, 910-11 (9th Cir.2001); LaScala, 96 F.Supp.2d at 238; Marshall v. Kelly, 465 F.Supp.341, 353 (W.D.Okla.1978). *See also* 29 C.F.R. § 2550.408b-2(a)(1) ("However, section 408(b)(2) does not contain an exemption from acts described in section 406(b)(1) of the Act (relating to fiduciaries dealing with the assets of plans in their own interest or for their own account), section 406(b)(2) of the Act (relating to fiduciaries in their individual or in any other capacity acting in any transaction involving the plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries) or section 406(b)(3) of the Act (relating to fiduciaries receiving consideration for their own personal account from any party dealing with a plan in connection with a transaction involving the assets of the plan). Such acts are separate transactions not described in section 408(b)(2)").

If § 408(b)(2) only covers actions arising out of § 406(a), we next address whether § 408(c)(2) then covers actions arising out of § 406(b). The relationship between the two sections has not often been discussed in opinions of the courts, and has never been addressed by the Seventh Circuit. The Department of Labor regulations suggest, "Section 408(b)(2) of the

Employee Retirement Income Security Act of 1974 ... refers to the payment of reasonable compensation by a plan to a party in interest for services rendered to the plan. Section 408(c)(2) of the Act and §§ 2250.408c-2(b)(1) through 2250.408c-2(b)(4) clarify what constitutes reasonable compensation for such services." 29 C.F.R. § 2250.408c-2(a). Some courts have read that regulation to signify that § 408(c)(2) does not create an exemption independent from the exemption created by § 408(b)(2). *See* LaScala, 96 F.Supp.2d at 239; Gilliam v. Edwards, 492 F.Supp. 1255, 1264 (D.N.J.1980) (reading § 2250.408c-2(a) to "intimate[] that § 1108(c)(2) and § 1106(b)(1) do not interact: This section refers to § 1108(c)(2) as merely clarifying what constitutes the reasonable compensation for the services mentioned in § 1108(b)(2), thus robbing § 1108(c)(2) of independent exemptive power"). Therefore, they find that neither § 408(b)(2) nor § 408(c)(2) creates an exemption for actions arising out of § 406(b). *Cf.* Harley v. Minnesota Mining and Mfg. Co., 42 F.Supp.2d 898, 910-11 (D.Minn.1999) (finding § 408(c)(2) to provide exemption for reasonable compensation otherwise prohibited under § 406(b)). For example, the Ninth Circuit, in Patelco, 262 F.3d 897, discussed the relationship between the § 408 reasonable compensation exemption and fiduciary self-dealing prohibition of § 1106(b). There, the court found that neither § 408(b)(2) nor § 408(c)(2) provided a safe harbor for fiduciaries engaging in self-dealing in violation of § 406(b). The court ultimately adopted the District Court of New Jersey's reasoning in Gilliam, 492 F.Supp. at 1263-64, finding that because § 406(b) creates a *per se* ERISA violation, reading §§ 406 and 408 together with the relevant regulation suggests that a fiduciary is not permitted to receive reasonable compensation for self-dealing. Patelco, 262 F.3d at 910-911. *See also* Whitfield v. Tomasso, 682 F.Supp. 1287, 1303-04 (S.D.N.Y.1988); Donovan v. Daugherty, 550 F.Supp.390, 404 n4 (D.C.Ala.1982); Daniels v. National Employee Benefit Services, Inc., 858 F.Supp. 684, 693 (N.D.Ohio 1994) ("§ 1108 does not apply to § 1106(b), because fiduciaries are prohibited from

receiving consideration – whether reasonable or not – from a third party for transactions involving the plan to which they owe their fiduciary obligations"); Chao v. Graf, 2002 WL 1611122, *9, n7 (D.Nev.2002).

We follow our fellow courts in determining that § 408(c)(2) modifies § 408(b)(2), and therefore does not create an exemption independent from the constraints of § 408(b)(2). And since § 408(b)(2) cannot serve as a defense against allegations of § 406(b), neither can § 408(c)(2) provide such an exemption. Therefore, we strike Linder's and JAA's fourth and fifth affirmative defenses and Liz/Mar's third and fourth affirmative defenses with regard to all § 406(b) allegations. They remain intact for purposes of challenging the § 406(a) allegations.

## Prohibited Class Exemption

Linder's and JAA's seventh and Liz/Mar's sixth affirmative defenses assert, with respect to Counts I, IX, X, XII, XIII, XIV, XVII, XVIII, XX, XXI, and XXII, that the Department of Labor Prohibited Transaction Class Exemption 86-128 ("PTE 86-128") exempts the brokerage fees the defendants are alleged to have improperly received in violation of ERISA § 406(b). Plaintiff contends that defendants' actions are not "covered transactions" under PTE 86-128, and therefore are not exempt from violation of ERISA § 406(b).

PTE 86-128, Class Exemption for Securities Transactions Involving Employee Benefit Plans and Broker-Dealers, 51 Fed. Reg. 41686 (November 18, 1986), creates an exemption under ERISA which allows persons who serve as fiduciaries for employee benefit plans to effect or execute securities transactions under certain circumstances. Section II of the exemption defines three covered transactions whereby a fiduciary's conduct is exempted from § 406(b) liability, as long as the conditions contained in Section III of the exemption are satisfied:

> (a) A plan fiduciary's using its authority to cause a plan to pay a fee for effecting or executing securities transactions to that person as agent for the

> plan, but only to the extent that such transactions are not excessive, under the circumstances, in either amount or frequency; (b) A plan fiduciary's acting as the agent in an agency cross transaction for both the plan and one or more other parties to the transaction; or (c) The receipt by a plan fiduciary of reasonable compensation for effecting or executing an agency cross transaction to which a plan is a party from one or more other parties to the transaction.

51 Fed. Reg. at 41695.

Plaintiff first contends that the plans' fixed annuity contracts with Nationwide were not covered transactions under PTE 86-128 because they were not securities transactions. Plaintiff further contends that the investments with Nationwide, LaSalle and Inter Securities were not covered transactions because they neither resulted in the payment of fees by the plans nor constituted agency cross transactions. Defendants respond by denying their roles as fiduciaries to the ERISA plans and alternatively questioning whether PTE-128(a) might apply to commissions paid indirectly by a third party securities broker to the fiduciary.

It is clear that PTE 86-128 only covers securities transactions. *See* 51 Fed. Reg. 41686 (summarizing the exemption as one "which allows persons who serve as fiduciaries for employee benefit plans to effect or execute securities transactions under certain circumstances"). Plaintiff suggests that defendants' actions with respect to the Nationwide annuity contracts were not securities transactions within the meaning of the Securities Act and ERISA. Specifically, plaintiff claims that defendants admitted to entering into "fixed annuity contracts," which are not considered securities. Although defendants do not contest such a point, a close reading of the complaint and Seventh Circuit law provides otherwise. The complaint alleges that the ERISA plans entered into "fixed *and* variable group annuity contracts" (cplt, ¶¶ 14, 15, 63, 75, 108, 109, and 116) (emphasis added). Variable annuity contracts are clearly securities (S.E.C. v. Variable Annuity Life Insurance Co. of America, 359 U.S. 65 (1959)), and even some fixed annuity contracts can be deemed securities, based on the amount of investment risk placed on the contract buyer. Otto v. Variable Annuity Life Ins.

Co., 814 F.2d 1127, 1141 (7th Cir.1986) (on rehearing, finding that particular fixed annuity contract was a security based on the right to alter past interest bands); Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co. of New York, 729 F.Supp.1162 (N.D.Ill.1989). Therefore, we cannot, at this point, find that defendants' actions with regard to the Nationwide annuities were not securities.

We turn now to plaintiff's second argument, that the transactions with Nationwide, Inter Securities, Gartmore, and LaSalle do not fall within the covered transactions defined in Section II of PTE 86-128. Defendants do not contest that those transactions neither resulted in the payment of fees by the plans themselves nor constituted agency cross transactions. Rather, defendants claim that they were not acting as fiduciaries, and alternatively, that PTE 86-128, Section II(a) could possibly be read to include commissions or fees paid indirectly to a fiduciary by a third party securities broker.

Defendants' initial argument that they were not fiduciaries of the plan is not an appropriate response when arguing in support of their affirmative defenses. As noted above, when considering a motion to strike an affirmative defense, we take the complaint's well-pleaded allegations as true. Plaintiff pled defendants' fiduciary status, and defendants cannot contest a complaint's well-pleaded allegations in an affirmative defense. *See* Donovan v. Robbins, 99 F.R.D. 593, 596 (N.D.Ill.,1983); Bobbitt, 532 F.Supp. at 736 ("A so-called affirmative defense that is surplusage, in that it merely raises matters already at issue under a denial, may be stricken").

Defendants' second argument is that PTE 86-128 may (or may not) cover commissions paid indirectly by a third party securities broker to the fiduciary.[3] Defendant suggests, "PTE

---

[3] Defendants do not contest that the actions are not "agency cross transactions," as defined by PTE 86-128. Defined as "securities transaction[s] in which the same person acts as agent for both any seller and any buyer for the purchase or sale of a security," 51 Fed. Reg. at 41694, we also find that defendants' actions do not constitute agency cross transactions.

86-128 leaves the question to the Court's imagination" (Linder's and JAA's response at 7). Because Rule 12(f) motions to strike, while not favored, "provide a useful and appropriate tool where the parties disagree only on the legal implications to be drawn from uncontroverted facts, or where questions of law are involved" (Dixon, 390 F.Supp.2d at 790 (C.D.Ill.2005) (*citing* Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 245 F.Supp. 889, 891 (N.D.Ill.1965)), we will address the legal merits at this point.

The covered transaction at issue reads: "The restrictions of section 406(b) of ERISA ... shall not apply to – (a) A plan fiduciary's using its authority to cause a plan to pay a fee for the effecting or executing securities transactions to that person as agent for the plan, but only to the extent that such transactions are not excessive, under the circumstances, in either the amount or frequency." 51 Fed. Reg. at 41695. In looking at the plain language of the exemption it is clear that a covered transaction is one in which a plan itself pays the fees of the fiduciary. Defendants neither pointed to nor could we find any indication in the exemption itself, or in the explanation and history of the exemption, that PTE 86-128 was intended to cover commissions paid by a third party to the fiduciary. In fact, in its comments to the exemption, the Department of Labor clarifies the limited scope of PTE 86-128: "Neither this class exemption, nor PTE 79-1 or PTE 84-46, provides relief for direct or indirect sales or other underlying transactions, described in section 406, in which a plan and a party in interest participate. Rather, this exemption provides relief from the restrictions of section 406(b) only for those service transactions that are covered by section II of the exemption and the receipt of compensation therefor by the plan fiduciary." *See also* Lowen v. Tower Asset Management, Inc., 829 F.2d 1209 (2d Cir.1987). In Lowen, the defendants invested the plans' assets in risky ventures, including ventures in which one or more of the defendants owned substantial equity interests. Additionally, many of the companies in which the defendants invested the plans'

assets agreed to pay the defendant corporations commissions, fees and securities in return for investment banking services, including the raising of capital, executed at or immediately prior to the time that defendants made investments in those particular ventures on behalf of the plans. *Id.*, at 1212. Defendants were found to violate ERISA §§ 406(b)(1) and (b)(3). The Second Circuit held that no exemption issued by the Secretary of Labor pursuant to § 408(b) of the ERISA statute, including Class Exemption 79-1, was applicable. *Id.*, at 1216-17. Because PTE 86-128 replaced PTEs 79-1 and 84-46, we find the Second Circuit's reasoning persuasive. Therefore, we find that defendants' actions are not exempted under PTE 86-128, and we strike defendants' affirmative defenses with respect to that exemption.

## CONCLUSION

For the foregoing reasons, we grant plaintiff's motion to strike Linder's and JAA's fourth and fifth affirmative defenses and Liz/Mar's third and fourth affirmative defenses with respect to all alleged violations of ERISA § 406(b). Such affirmative defenses may continue with respect to alleged violations of ERISA § 406(a) – Counts VI, VII, and VIII. We also grant plaintiff's motions to strike Linder's and JAA's seventh and Liz/Mar's sixth affirmative defenses.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 10, 2006.