# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 3812 |
| | ) | |
| MICHAEL LINDER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elaine L. Chao, Secretary of Labor, U.S. Department of Labor, brings this motion for partial summary judgment on certain counts of her complaint against defendants Michael Linder and Joseph/Anthony and Associates (collectively "the JAA defendants"), Thomas Kisting and Fred Schreier. The Secretary argues that there is no genuine issues of material facts that these defendants, as fiduciaries of ERISA-covered benefits plans, breached their fiduciary duties in violation of ERISA. Defendants Kisting and Schreier argue that there are genuine issues of material fact that preclude summary judgment. Further, Schreier and Kisting bring motions for discovery or, in the alternative, to stay the summary judgment proceedings. We grant plaintiff's motion for partial summary judgment against Kisting and the JAA defendants, and deny it as to Schreier. We further grant Schreier's motion for discovery and deny Kisting's motion.

## FACTUAL BACKGROUND

The following facts are not in dispute and, for the most part, are taken directly from

plaintiff's statement of facts.[1] Plaintiff brought this action against defendants JAA, Kisting and Schreier (among other defendants) in relation to a number of employee benefits plans covered by ERISA § 3(3).[2]

Defendant Linder was the president of JAA, an Illinois corporation. His wife, Elizabeth Linder (E. Linder), was the corporate secretary of JAA. JAA was a third party administrator for all of the benefits plans at issue. In accordance with their arrangement, the JAA defendants rendered individualized investment advice to the plans on a regular basis, which served as a primary basis for the plans' investments. Furthermore, JAA had signatory authority over the checking accounts of the plans, and paid the expenses without prior approval of the plans' trustees.

In addition to being the corporate secretary for JAA, E. Linder was also the president and primary owner of Liz/Mar and Associates, Inc. (Liz/Mar), a brokerage firm that was located at the same business address as JAA. Although Linder was not an officer of Liz/Mar, he controlled Liz/Mar, including its financial activities. Liz/Mar received fees negotiated by the JAA defendants as a result of the investments made by the plans for which JAA acted as a third party administrator and/or consultant.

JAA entered into administrative service agreements with the plans, and under these agreements each plan agreed to pay JAA an annual administrative consulting fee at the beginning of each year and an annual consulting fee based on the percentage of the total assets

---

[1]Defendant Schreier objects to plaintiff's statement of material facts to the extent that it alleges facts based on admissions by the JAA defendants because of their failure to respond to plaintiff's interrogatories, which defendant Schreier answered. Schreier argues that we cannot use the admissions of one defendant against a co-defendant. We agree and note that we do not rely on those admissions in our determination of summary judgment against Schreier.

[2]These plans were named as nominal defendants under Fed. R. Civ. Pro. 19(a). For simplicity we adopt the parties' shorthand references to the names of the plans. (*See* plf. motion for partial summary judgment, p.4, n.3).

of the plan, determined on a monthly basis. Between January 1997 and October 2003, the plans paid a total of $4,663,754.19 to JAA pursuant to these administrative services agreements. None of the plans' agreements with JAA provided for JAA to receive any compensation in addition to the fees set forth in the agreements.

Kisting was the Plan Administrator of the Local 498 DB and DC Plans; Schreier was a Plan Trustee of the Local 136 Plans, a fiduciary within the meaning of ERISA § 3(21)(A)(I) and (iii), and, as a fiduciary, was a party in interest to the Local 136 Plans within the meaning of ERISA § 3(14)(A).

On or about January 4, 1999, Linder gave and Schreier accepted a motorcycle valued at $19,060. On or about January 15, 1999, Linder gave and Kisting accepted a motorcycle valued at $19,808.10.

<u>Nationwide Fees</u>

On or about August 26, 1997, JAA entered into a Master Service Agreement with Nationwide Insurance Company (Nationwide), under which JAA, for a fee, agreed to perform various administrative services for Nationwide with respect to pension plan investors referred to Nationwide by JAA. These plans included the Local 498 DB and DC Plans of which Kisting was the Plan Administrator and the Local 136 DB and DC Plans of which Schreier was a trustee and fiduciary. It was the practice of Nationwide to pay fees, commissions and bonuses to insurance agents who caused pension plans to enter into annuity contracts with Nationwide.

After entering into the agreement with Nationwide, Linder recommended to the trustees of the plans that the plans should change their investments to no-commission mutual funds being administered by Nationwide. Instead of no-commission mutual funds, however, Linder caused the plans to enter into group annuity contracts with Nationwide, which paid

him commissions. As a result of the plans' investment with Nationwide, JAA received fees from Nationwide called "administrative override fees." In addition, Linder caused Nationwide to pay fees and commissions on the group annuity contracts to Liz/Mar, called "trailer commission fees," even though Liz/Mar performed no services in connection with the group annuity contracts. Linder then caused Liz/Mar to pay the commissions it received from Nationwide to himself and to JAA. Finally, as a result of investments made by all client plans with Nationwide, including the plans named in the Secretary's complaint, JAA received sale incentive bonuses called "Pinnacle Payments."

Linder caused Nationwide to send to him, and not to the trustees, all documentation regarding fees, commissions and compensation from the plans' group annuity contracts, in order to hide that information from the trustees of the plans. Linder also received reports and statements from Nationwide reflecting the value of the plans' group annuity contracts at Nationwide and, instead of forwarding the reports and statements to the plans, generated materially false and fraudulent new reports and statements to disguise the fact that the funds were invested in group annuity contracts instead of mutual funds.

Consistent with this scheme, Linder, without the approval of the trustees, selected the specific group annuity investment vehicles comprising the plans' group annuity contract investments with Nationwide. Linder authorized a JAA employee to sign the name of Plan Trustee Larry Swope, without Swope's permission, on the application for the East Central Pension Plan's variable group annuity contract with Nationwide, designating Liz/Mar as the recipient of commissions under the contract. He also authorized a JAA employee to sign the name of Paul Hayes, Plan Administrator for Local 218 Pension and DC Plans, without Hayes' permission, on the application for Local 218 DB and DC's fixed and variable group annuity

contracts with Nationwide. Linder invested the assets of Local 218 DB's Plan in Nationwide group annuity contracts, without any authorization from plan trustees, and did not advise any plan trustee or other fiduciary that Nationwide was paying him fees.

The fees Nationwide paid to JAA and Liz/Mar as a result of the plans' investments in the Nationwide contracts were based on percentages of the plans' investments, and were determined by JAA within a range of fees identified in Nationwide's compensation tables. In most instances Linder selected fees at the higher end of the range of fees available. It was Nationwide's practice to deduct money from the plan participant accounts in order to pay JAA's fees, commissions and bonuses, and as a result the amount of plan assets available for investments in Nationwide was reduced. Between 1997 and 2003, Nationwide paid JAA fees totaling $5,387,156.88, including fees paid to JAA through Liz/Mar. As a result of investments made by all plans referred to Nationwide by JAA, including, but not limited to, the plans named in the Secretary's complaint, JAA also received a total of $30,570.79 in Pinnacle Payment bonuses.

<u>Dedicated Premium Bank Account Fees</u>

As third party administrator for the Local 136, 498 and 218 Plans, JAA arranged for the purchase of death benefit life insurance to provide plan participants pre-retirement death benefits and stop-loss insurance to insure the plans against the payments of large health claims, and established "Dedicated Premium Bank Accounts" to pay the premiums on the insurance contracts. At all relevant times JAA prepared invoices for the Locals 136, 498 and 218 Plans' death benefits and stop-loss insurance premiums that exceeded the amounts needed to pay the premiums, and between 1998 and 2003 paid itself a total of $1,728,902.46 from the respective accounts, all without notice to or approval of the plans' trustees.

## United of Omaha Fees for the Local 136 DB Plan's Investment

Linder, as Liz/Mar's representative, entered into a commission agreement with United of Omaha Life Insurance Company ("United or United of Omaha"), effective March 12, 1998. On or about that date, based on the advice of the JAA defendants, the Local 136 DB Plan entered into a variable group annuity contract with United. Linder selected the mutual funds available under the Local 136 DB Plan's variable group annuity contract, and as a result of the negotiated agreement Linder directed that United pay commissions to Liz/Mar. No plan trustee or other plan fiduciary knew that United paid commissions to Liz/Mar as a result of that investment. Between April 29, 1998 and January 31, 2000, United paid Liz/Mar a total of $72,498.82, which caused a reduction in plan assets.

## Pan American Fees for the Local 136 DB Plan's Investment

On August 31, 1998, Linder, as representative of JAA and Liz/Mar, entered into a Pension Commission Agreement with Pan American Life Insurance Company ("Pan American"). Based on advice of the JAA defendants, on or about July 24, 1998, the Plan entered into a variable group annuity contract with Pan American. Linder selected the mutual funds in which the Plan invested and as a result of those investments Pan American paid fees to JAA and Liz/Mar. Between September 29, 1998, and May 27, 1999, Pan American paid JAA and Liz/Mar fees totaling $78,991. No plan trustee or other plan fiduciary knew that Pan American paid fees to JAA and to Liz/Mar as a result of the plan's investment. This caused the amount of plan assets available for investment in the Pan American contract to be reduced.

## Gartmore Trust Company Fees for Local 380 Retirement Plan's Investment

On or about March 2, 1998, based on the advice of the JAA defendants, the Local 380 Retirement Plan invested in a fund managed by Gartmore Trust Company ("Gartmore").

Between March 17, 1999, and March 14, 2003, United Bond & Trust Company, as the plan's agent for the investment, paid JAA $17,957.87 in fees as a result of the plan's investments in the Gartmore-managed fund. No plan trustee or other plan fiduciary -- other than Trustee Brian Diskin -- knew that Gartmore paid fees to JAA as a result of the plan's investments in the fund. As a result of the payment of commissions to JAA, the amount of plan assets available for investment with Gartmore was reduced.

### LaSalle Street Securities Brokerage Referral Fees
### for the Local 136 DB and Local 498 DB Plan Accounts

In or about January 1995, based on the advice of the JAA defendants, the Local 498 DB Plan opened a brokerage account with LaSalle Street Securities ("LaSalle"), and thereafter made investments with LaSalle. In or about July 1997, based on JAA defendants' advice, Local 136 DB Plan opened a brokerage account with LaSalle. Without the knowledge of the plan trustees, or other fiduciaries for the Local 136 DB Plan, Linder signed the LaSalle form authorizing fees to be paid to Liz/Mar. Again, on January 12, 1998, Linder signed a similar authorization form in connection with Local 498 DB Plan's investments.

As a result of both plans' investments, LaSalle paid brokerage referral fees to Liz/Mar through Linder. No trustee or other plan fiduciary knew about the fees paid to Liz/Mar by LaSalle as a result of the plans' investments. Between January 1997 and January 2000, LaSalle paid Liz/Mar a total of $479,617 in referral fees as a result of investments made by all of JAA's plan clients, including Local 136 DB and Local 498 DB Plans.

### Inter Securities, Inc. Brokerage Referral Fees for the
### Local 136 HW and Local 498 Plan Accounts

In or about November 1996, the Local 136 HW Plan, based on advice of the JAA defendants, opened a brokerage account and thereafter made investments with Inter

Securities, Inc. ("Inter Securities"). In or about August 1998, the Local 498 DB Plan, based on advice of the JAA defendants, opened a brokerage account with Inter Securities. As a result of the plans' investments, Inter Securities paid brokerage referral fees to Liz/Mar through Linder. No plan trustee or other plan fiduciary knew that Inter Securities paid these fees to Liz/Mar as a result of the plans' investments. Between January 1998 and January 2000, Inter Securities paid Liz/Mar a total of $124,535.14 in referral fees for all of JAA's clients, including the Local 136 HW and the Local 498 DB Plans.

### Reimbursement of Travel and Other Expenses

Between October 1998 and September 2001, JAA reimbursed $23,655.23 to its employees for travel and other expenses from Local 136 DB Plan's checking account, without approval of the plan's trustees. Between October 1998 and October 2002, JAA reimbursed $10,007.94 to its employees for travel and other expenses from Local 136 DC Plan's checking account, without the trustees' approval.

### Plan Asset Disbursement for Loan

On or about March 27, 2003, JAA disbursed $75,458.48 to itself from Local 136 DC Plan's checking account, which it characterized as a loan for legal fees, without prior approval of the plan's trustees.

### PROCEDURAL BACKGROUND

On January 27, 2004, Linder, Kisting and Schreier were indicted by a grand jury for violating 18 U.S.C. § 1954. Linder was charged with giving, offering, and promising to give or offer Kisting and Schreier a gift and thing of value (the motorcycles) because of the actions, decisions and other duties of Kisting and Schreier relating to questions and matters concerning their respective plans. Kisting and Schreier were charged with receiving from JAA and

Linder a gift and thing of value (the motorcycles) because of their actions, decisions and other duties relating to the questions and matters concerning their respective plans. Kisting demanded a trial by jury, and on September 13, 2004, the jury found him guilty. On October 20, 2004, Schreier pled guilty, and on December 10, 2004, Linder also entered a plea of guilty.

The Secretary filed her original complaint against defendants on June 31, 2005, and an amended complaint on August 31, 2005, alleging violations of ERISA. 29 U.S.C. § 1001, *et seq.* As the allegations relate to the current motion, the Secretary alleges that the JAA defendants violated ERISA §§ 404(a)(1)(A) and 406(b)(3) by accepting fees from Nationwide and other third parties with which the plans invested; that they violated ERISA §§ 404(a)(1)(A) and 406(b)(1) and (2) by paying themselves additional fees from plan accounts dedicated for the payment of plan insurance premiums; and they violated ERISA §§ 404(a)(1)(A), 406(a)(1)(A) and (B) and 406(b)(1) and (2) by reimbursing their employees' travel and other expenses, and by loaning themselves money from plan checking accounts. The Secretary further alleges that defendants Kisting and Schreier violated ERISA §§ 404(a)(1)(A) and 406(b)(3) by accepting gifts given to them by defendant Linder to influence their actions with respect to the respective plans. It alleges that Linder violated ERISA § 405(a)(1) by knowingly participating in Kisting's and Schreier's fiduciary breaches.

On April 18, 2006, the JAA and Liz/Mar defendants filed a motion to stay the proceedings pending the resolution of additional criminal charges that were going to be filed against Linder. Linder had been tendered a copy of the information from the U.S. Attorney on March 14, 2006, but the indictment was not filed with the court until June 30, 2006.[3] We

_____

[3]Linder was charged with violating 18 U.S.C. §§ 664, 1341 and 1346 in connection with his alleged self-dealing, which is also the subject of the Secretary's complaint. Linder pled guilty to all seven counts on June 30, 2006.

granted the motion to stay to the extent that discovery would be stayed, but permitted the Secretary to pursue partial summary judgment against the defendants on the record that stood at the time, if it could be done without further discovery. Plaintiff then filed this motion against the JAA defendants with regard to counts 1-10, 12-18, 20-21, and 23; against defendant Kisting with regard to count 19; and against defendant Schreier with regard to count 11. The JAA defendants did not file a response to the Secretary's motion. Defendants Kisting and Schreier did file responses, and additionally filed motions for discovery or, in the alternative, to stay the summary judgment proceedings.

## ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (U.S. 1986). We must evaluate admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In addition, in accordance with Local Rule 56.1, the moving party must submit a statement of material facts, to which the non-moving party must respond. Further, the moving party must respond to any statement of additional facts submitted by the non-moving party. Failure to so respond deems those facts admitted. Here, the Secretary has failed to respond to Kisting or Schreier's statements of additional facts. Thus, we take those facts as admitted. Of relevance is the fact that Schreier did not know of the illegal conduct of Linder and JAA, or the improper fees paid to them. Schreier, further, was never influenced by his acceptance of the motorcycle, always voted independent of and often against Linder's interest, and was

the impetus behind the investigation which led to criminal charges and a civil case against Linder. Both Kisting and Schreier were charged and convicted under the "graft" prong of 18 U.S.C. § 1954 because of their position as fiduciaries, not the "bribery" prong, which would require evidence of influence on their actions as a result of the gift.

<u>Counts 11 and 19 against Kisting and Schreier</u>

The Secretary alleges in her complaint that Kisting and Schreier violated ERISA §§ 404(a)(1)(A) and 406(b)(3) when they received motorcycles in exchange for influence upon the plans. The Secretary asserts that there is no genuine issue of material fact as to this claim, and points to defendants' convictions in support of her argument. Defendants argue that summary judgment is not proper in this instance. While defendants admit to being fiduciaries with respect to their plans,[4] and admit to receiving motorcycles from Linder, who they admit is a party in interest,[5] they argue that their convictions do not support plaintiff's position since both were convicted under the graft prong of the statute, *i.e.* because of their positions as fiduciaries and not under the bribery prong, *i.e.* in exchange for their influence on the plans. Thus, the convictions cannot support a finding that a bribe occurred, as alleged in plaintiff's complaint.     ERISA was enacted as a comprehensive remedial statute designed to protect "the interests of participants in employee benefit plans and the beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

---

[4] Kisting admits that he was the Plan Administrator of the Local 498 DB and DC Plans (def. resp. to plf. stmt of material facts #7). Schreier admits that he was a Plan Trustee of the Local 136 Plans and that he was a fiduciary and party in interest within the meaning of the statute (def. ans. to plf. am. cplt. ¶ 8).

[5] Kisting admits that Linder was retained by the Local 498 DB plan trustees to provide investment advice for a fee (Kisting ans. to Secy request for admissions #129). Schreier admits that JAA had signatory authority over the plan checking account for the Local 136 DB and DC plans (Schreier ans. to Secy's request for admissions #15, 16). Thus, Linder was a fiduciary as defined by ERISA § 3(21), making him a party in interest under § 3(14).

29 U.S.C. § 1001(b). The fiduciary duties imposed by ERISA have been characterized as "the highest known to law." Donovan v. Bierwirth, 680 F.2d 263, 272 (2d Cir. 1982).

Section 404(a)(1)(A) provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." This is described as the duty to act with "complete and undivided loyalty," and with an "eye single to the interests of the participants and beneficiaries." Leigh v. Engle, 727 F.2d 113, 123 (7th Cir. 1984). A fiduciary breaches its duty of care under section 404(a)(1)(A) whenever it acts to benefit its own interests. Herdrich v. Pegram, 154 F.3d 362, 371 (7th Cir. 1998) rev'd on other grounds, 530 U.S. 211 (2000).

Section 406 supplements the general standard by providing that certain transactions are prohibited per se. Relevant here is § 406(b)(3), which bars a fiduciary from receiving "any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." The parties disagree as to the meaning and scope of this provision. Defendants argue that the provision requires the Secretary to show there was a *quid pro quo* on the part of defendants for the receipt of the motorcycles. Defendants argue that since they were convicted under the "graft" prong of 18 U.S.C. § 1954, which does not require evidence of bribery, proof of their convictions alone is not sufficient to demonstrate a violation of § 406(b)(3).[6]

To interpret this provision we turn first to the purpose behind its enactment. Congress

---

[6]Defendants also argue that since the Secretary alleged that defendants received motorcycles "in exchange for influencing [their] actions with respect" to the plans, the Secretary must prove a *quid pro quo*. Since the Secretary puts forth no such evidence, summary judgment is improper. We disagree. Because we hold that evidence of a *quid pro quo* is not required for a finding of liability under the statute, the fact that the Secretary alleged more than is needed does not preclude a finding that defendants violated the statute. *See* Carlon v. Thaman (In re NationsMart Corp. Sec. Litig.), 130 F.3d 309, 315 (8th Cir. 1997)(complaint should not have been dismissed for alleging more than the statute required for liability).

adopted the specific prohibitions in § 406 "to prevent categories of transactions which offer a high potential for insider abuse of plans or for loss of plan assets." Freund v. Marshall & Ilsley Bank, 485 F. Supp. 629, 637 (D. Wis. 1979) citing Marshall v. Kelly, 465 F. Supp. 341, 349 (W.D. Okl., 1979). The case law indicates that the legislative purpose of § 406(b) was to prevent "kickbacks," making "illegal *per se* the types of transactions that experience had shown to entail a high potential for abuse." Donovan v. Cunningham, 716 F.2d 1455, 1464-1465 (5th Cir. 1983) citing Cutaiar v. Marshall, 590 F.2d 523, 529 (3d Cir.1979). In Lowen v. Tower Asset Management, Inc., 653 F. Supp. 1542 (S.D.N.Y. 1987), the court noted the rationale behind ERISA § 406(b):

> The prohibitions of section 406(b) supplement the other prohibitions of section 406(a) of the Act by imposing on parties in interest who are fiduciaries a duty of undivided loyalty to the plans for which they act. These prohibitions are imposed upon fiduciaries to deter them from exercising the authority, control, or responsibility which makes such persons fiduciaries when they have interests which may conflict with the interests of the plans for which they act. In such cases, the fiduciaries have interests in the transactions which may affect the exercise of their best judgment as fiduciaries. 29 C.F.R. § 2550.408b-2(e)(1).

Congress' purpose for enacting § 406(b), coupled with the remedial nature of ERISA as a whole, leads us to follow that those courts that have determined violations of §406(b)(3) do not require evidence of a *quid pro quo* transaction. Congress' intent was to prevent fiduciaries from engaging in any conduct that might have the potential to cause them to be disloyal to the plan. It is clear that Congress sought to prevent fiduciary breaches by prohibiting transactions between fiduciaries and parties of interest that exude even the appearance of impropriety and allow for the potential of abuse. As noted by one court, "[I]t would be psychologically unrealistic to expect a trustee to ignore his personal interests when they are potentially at odds with his fiduciary obligations." Brink v. DaLesio, 496 F.Supp. 1350 (D. Md. 1980) *aff'd in relevant part, rev'd on other grounds,* 667 F.2d 420 (4th Cir. 1981). To require

evidence of a *quid pro quo* transaction for proof of a violation of § 406(b)(3) would unreasonably constrict this broad prohibition. Furthermore, based on the above, it does not matter that Schreier did not know of the improper fees being paid to Linder and JAA, or that it is still a fact in dispute as to whether Kisting knew. Regardless of their knowledge of JAA's illegal conduct, Kisting and Schreier, as fiduciaries, violated ERISA by receiving a personal gift worth almost $20,000, from a party in interest to the plan. Thus, we find defendants' conviction under the "graft" prong of 18 U.S.C. § 1957 sufficient proof of their violation of ERISA § 406(b)(3).

Defendants further argue that in order to be found liable under § 406(b)(3) it must be shown that there was some harm to the plan. Because the motorcycles defendants received were from the monies of Linder, the Secretary cannot show any harm to the plan as a result of the transaction. We do not agree that harm to the plan must be shown. The *per se* nature of the § 406 prohibitions cuts against the need-to-show harm to the plan. "Even in the absence of bad faith, or in the presence of a fair and reasonable transaction, [§ 406(b)] establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans." Lowen, 635 F. Supp. at 1553 *quoting* Gilliam v. Edwards, 492 F. Supp. 1255, 1263 (D.N.J. 1980). Other courts have agreed. *See* Cutaiar v. Marshall, 590 F.2d 523 (3rd Cir. 1979); Chao v. Hall Holding Co., 285 F.3d 415, 439 (6th Cir. 2002); Kelly, 465 F. Supp. 341; Reich v. Valley Nat'l Bank, 837 F. Supp. 1259 (S.D.N.Y. 1993). We therefore find that through proof of defendants' convictions, the Secretary has demonstrated that there is no genuine issue of material fact as to defendants' liability under § 406(b)(3).

A lack of evidence of harm to the plan can, in some circumstances, preclude plaintiff's

breach of fiduciary claim under ERISA § 404(a)(1)(A). Mira v. Nuclear Measurements Corp., 107 F.3d 466 (7th Cir. 1997). There, the court found that The court here distinguished its earlier opinion in Leigh v. Engle, 727 F.2d 113 (7th Cir. 1984), in that in Leigh, the plaintiffs had shown that the fiduciaries had breached their duty of loyalty to the plans, which obviated the need to show economic harm. The court found that the plaintiffs in Mira had failed to show either economic harm or a breach of the duty of loyalty, and thus could not recover. Here, there is sufficient proof that defendants breached their duty of loyalty to the plans. Defendants received motorcycles valued at over $19,000 apiece, for their own personal use. These motorcycles did not go to the plans, but to the individual defendants, because of their status as fiduciaries to the plans. By engaging in such transaction, defendants were not acting with an "eye single" to the interest of the plan, but in their own interests, and thus breached the duty of loyalty to the plans, in violation of § 404(a)(1). Furthermore, the remedies provided by ERISA § 409 include not only damages, but equitable remedies. The Seventh Circuit has found equitable remedies to be available even where damages are not (because no harm to the plan has been shown). Brock v. Robbins, 830 F.2d 640, 647 (7th Cir. 1987). It has been proven through defendants' convictions that they breached their duty, and because even if money damages are not available, equitable remedies are – no harm to the plan need be shown.

This finding does not end the matter. Defendants have filed motions for discovery under Fed. R. Civ. Pro. 56(f), or in the alternative to stay summary judgment proceedings. A Rule 56(f) motion may be granted if the non-moving party can show that despite his diligence in conducting discovery, he has been unable to obtain the discovery needed to respond to a summary judgment motion. Theotokatos v. Sara Lee Personal Prods., 971 F. Supp. 332, 343 (N.D. Ill. 1997). Defendants argue that they have been precluded from engaging in discovery,

because shortly after the discovery plan was put in place by this court the JAA defendants moved for a stay of discovery pending resolution of Linder's criminal charges. They further argue that they did not engage in discovery during the three months between the filing of the complaint and the motion to stay, because the Secretary had mentioned on multiple status dates that filing a motion to stay discovery was being considered. Defendants contend that they did not want to waste time and money creating interrogatories and other discovery that would go unanswered in the event of a stay. Kisting further declares that he was incarcerated during the period in which any discovery could take place, and that he had difficulty communicating with his attorneys during this time.

Simply showing an inability to engage in discovery is not enough, however. In order to prevail on a Rule 56(f) motion, defendants must show that further discovery could impact the outcome of the Secretary's motion against them. Korf v. Ball State University, 726 F.2d 1222, 1230 (7th Cir. 1984). Kisting argues that he requires discovery to determine Linder's motivation behind giving him the motorcycle, and to prove that the gift of the motorcycle did not harm the plan. Such discovery would have no purpose because neither Linder's motivation, nor harm to the plan, need to be shown in order to find defendants liable under § 404(a)(1)(A) or § 406(b)(3). Thus, we deny Kisting's motion and grant the Secretary summary judgment on count 19 of the complaint.

In addition to Kisting's arguments,[7] Schreier also argues his need to engage in discovery relating to his affirmative defense of the statute of limitations.[8] ERISA § 413 states that the statute of limitations on breach of fiduciary duty claims is the earlier of either:

---

[7]To the extent that Schreier argues for discovery relating to Linder's motivation or harm to the plan, we deny his motion for discovery.

[8]Kisting did not assert a statute of limitations defense.

(1) Six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

Schreier admits to accepting the motorcycle "on or about January 4, 1999." Under the first provision, the statute of limitations would have expired on or about January 4, 2005. The Secretary filed her complaint on June 29, 2005. However, in place between August 29, 2003, and June 30, 2005, was an agreement between the Secretary and the 139 DC, 139 DB, and 139 HW plans, tolling the statute of limitations under ERISA in order to meet and exchange additional information and, if appropriate, to conduct negotiations with respect to claims that may be asserted by the Secretary. This agreement was signed by all trustees of the 139 plans, including defendant Schreier. The tolling of the statute during this period would render timely the Secretary's complaint under § 413(1).

Yet, § 413 requires that the shorter of the two time periods be the relevant statute of limitations. The Secretary asserts that it first had knowledge of Linder's giving Schreier a motorcycle on October 1, 2002. The Secretary offers the affidavit of John Legan, a Special Agent for the Department of Labor who, on September 20, 2002, received an anonymous complaint that Linder had given Kisting a motorcycle. During Legan's investigation of this complaint, on October 1, 2002, he learned that Linder had also given Schreier a motorcycle. The Secretary includes as an exhibit to Legan's declaration a copy of the envelope in which the anonymous complaint allegedly came (in order to show the postmark date), but not a copy of the complaint itself. The Secretary further offers the affidavit of Irene Lindow, an investigator for the Employee Benefits Security Administration Division of the Department of Labor, who corroborates Mr. Legan's statements.

If these statements are true, the Secretary's complaint was timely filed under § 413(2). The Secretary, however, puts forth these affidavits not only to rebut Schreier's statute of limitations defense, but to rebut Schreier's allegations that he requires discovery. As Schreier points out, it is disingenuous for the Secretary to put forth these affidavits, yet claim that Schreier is not entitled to depose these individuals or to seek other rebuttal evidence. Additionally, Schreier claims that the Secretary did not disclose these affiants in her Rule 26(a)(1) disclosures, so that Schreier had no reason to depose them before the stay order was entered and should not now be prejudiced for not having done so. We note that we are unsure exactly how Schreier would be able to rebut such evidence, but, because summary judgment is an extraordinary remedy, and because we must draw all inferences in favor of the non-moving party, we grant Schreier's motion for the limited issue of discovery as to his statute of limitations defense and deny, for now, the Secretary's motion for summary judgment as to count 11 of the complaint.[9]

### Counts 1-10, 12-18, 20-21 and 23 against the JAA Defendants

The JAA defendants did not file a response to the Secretary's motion for partial summary judgement, nor did they answer the Secretary's request for admissions, which was served five months before the motion. Pursuant to Fed. R. Civ. Pro. 36(a) and Local Rule 56.1, we deem admitted the statements in the Secretary's request and the facts in the Secretary's statement of material facts, filed as part of the motion for partial summary judgment. Mangan v. Broderick & Bascom Rope Co., 351 F.2d 24, 28 (7th Cir. 1965). The undisputed facts show that the JAA defendants were fiduciaries of all of the plans in question, as defined by § 3(21). Under that provision,

---

[9]Briefing of the Secretary's second motion for partial summary judgment against Schreier was completed on May 23, 2007. We hold off ruling on that motion as well, pending completion of discovery.

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

JAA entered into service agreements with all of the plans, whereby JAA would render investment advice to the plans for a fee. All of the plans paid JAA fees with respect to the services JAA rendered. Additionally, JAA had signatory authority over the checking accounts of the 136 DB and DC plans, the Local 380 Retirement Plan, the 498 DB and DC plans and the Local 18 DB and DC plans. JAA paid the expenses of these plans from the checking accounts without prior approval of the plans' trustees. Furthermore, JAA exerted discretion over the plans by, *inter alia*, disregarding the instructions of the plan trustees to invest in no-commission mutual funds and, instead, investing in group annuity contracts that paid the JAA defendants commissions; causing documents related to fees to be sent to themselves, rather than to plan trustees, in order to keep fee information from the trustees; and intentionally not sending investment value reports to the trustees but, instead, sending materially false and fraudulent investment value reports, all in order to disguise the fact that the plans were invested in group annuity contracts rather than mutual funds. Finally, JAA had control over the disposition of plan assets by, *inter alia*, deducting fees from plan accounts dedicated for the payment of plan insurance premiums, and paying plan expenses from those accounts. The evidence clearly shows that JAA meets ERISA's definition of a fiduciary.

Linder also meets ERISA's definition of a fiduciary. The Fifth and Ninth Circuits have held that a corporate officer can be considered a fiduciary even when only the corporation, not he, is named as fiduciary to the plan. Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1459 (9th Cir.

1995); Bannister v. Ullman, 287 F.3d 394, 403 (5th Cir. 2002). The rationale is that ERISA's definition of fiduciary looks beyond formal designations to the person's conduct and authority with respect to the plan – whether or not the person exerted discretion over the plan or plan assets. *Id.* Officers who do so are just as much fiduciaries as the corporations that employ them. *Id.* The Third Circuit seems to hold just the opposite, finding that when a corporation is a named fiduciary, the officers who are exerting discretion over the plans in the name of that corporation cannot be held liable and can only be liable where they individually perform fiduciary functions. Confer v. Custom Eng'g Co., 952 F.2d 34, 37 (3rd Cir. 1991). The Ninth Circuit noted this decision and rejected its reasoning, finding that the legislative history and administrative notes that accompany the ERISA provisions militate a broader reading. Kayes, 51 F.3d at 1459. While the Seventh Circuit has not yet addressed this issue, it has consistently given a broad reading to ERISA's definition of fiduciary. Sladek v. Bell System Management Pension Plan, 880 F.2d 972, 976 (7th Cir. 1989). At least one court in this circuit has held that the Ninth Circuit's holding is consistent with the Seventh Circuit's broad reading. Chao v. Crouse, 346 F. Supp. 2d 975, 985 (S.D. Ind. 2004); *but see* Meredith v. Allsteel, Inc., 814 F. Supp. 657, 660 (N.D. Ill. 1992)(finding, without discussion, that corporate officers are not fiduciaries absent exertion of individual discretion).[10]

The undisputed facts show that, at all relevant times, Linder was the primary

---

[10]Other courts find that the decision in Kayes is really no different from the decision in Confers, in that both agree that a corporate officer may be considered a fiduciary when he or she exerts discretion over a plan. *See e.g.* Stein v. Smith, 270 F. Supp. 2d 157, 169 (D. Mass. 2003). One court notes that the only difference is that the Confers court begins with a rebuttable presumption that a corporate officer does not exert independent fiduciary status and the Kayes court does not presume one way or the other. *See* Briscoe v. Fine, 444 F.3d 478, 487 (6th Cir. 2006). We agree that the Kayes, Bannister, and Crouse decisions do not stand for the proposition that a corporate officer can be found to be a fiduciary by reason of his officer status alone, with no evidence of discretionary authority over the plans. *See* Trs. of the Graphic Communs. Int'l Union Upper Midwest Local 1-M Health & Welfare Plan v. Bjorkedal, 2006 U.S. Dist. LEXIS 88351 (D. Minn. 2006).

controlling officer and manager of JAA, and performed all of JAA's fiduciary functions or

directed other JAA employees to perform those functions. Linder selected the funds that the

plans invested in, negotiated the agreements with the companies that invested those funds, and

pled guilty and was found individually criminally liable for the same conduct alleged here.

United States v. Linder, No. 06 CR 50038 (N.D. Ill.2006). Thus, Linder is also a fiduciary

within the meaning of the statute.

The Secretary alleges that the JAA defendants engaged in prohibited transactions in

violation of § 404(a)(1)(A), § 406(a)(1)(A) and (B), and § 406(b)(1) and (2), by reimbursing

themselves for their employee travel and other expenses, and by loaning themselves money

from plan checking accounts, all without approval from the plan trustees. Section 406(a)(1)

provides, in pertinent part:

> Except as provided in section 1108 of this title:
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a
> transaction, if he knows or should know that such transaction constitutes a
> direct or indirect –
>> (A) sale or exchange, or leasing, of any property between the plan
>> and a party in interest;
>> (B) lending of money or other extension of credit between the
>> plan and a party in interest;

Section 406(b) provides, in pertinent part:

> A fiduciary with respect to a plan shall not –
>> (1) deal with the assets of the plan in his own interest or for his own
>> account,
>> (2) in his individual or in any other capacity act in any
>> transaction involving the plan on behalf of a party (or represent
>> a party) whose interests are adverse to the interests of the plan or
>> the interests of its participants or beneficiaries.

The undisputed facts show that the JAA defendants reimbursed their employees' travel and

other expenses without the approval of plan trustees, and loaned themselves money from plan

checking accounts, again without trustees' approval. The facts further show that the JAA

defendants contracted with the plans to render investment advice and consulting for an administrative consulting fee and an additional consulting fee based on percentage of assets, both to be paid annually. Those contracts did not provide for the JAA defendants to receive any other compensation besides these fees. Thus, the travel expense reimbursements do not fall within the exception found in § 1108(b)(2). *See* Chao v. Malkani, 452 F.3d 290, 296 (4th Cir. 2006)(fiduciary liable where it collected reimbursements never contracted for). Furthermore, because such reimbursements were not contracted for, they constitute self-dealing in violation of §406(b)(1) and (2). Though the Seventh Circuit has yet to address the issue, this court has held that transactions prohibited under § 406(b) cannot find shelter in the safe-harbor provision of § 1108(b)(2). Chao v. Linder, 421 F. Supp. 2d 1129 (N.D. Ill. 2006); Patelco Credit Union v. Sahni, 262 F.3d 897, 910 (9th Cir. 2001). Defendants state in their answer to plaintiff's complaint that the loan has since been repaid. However, as stated above, the transactions outlined in § 406 are prohibited *per se,* regardless of a showing of harm to the plan because such transactions violate the duty of loyalty. Mira, 107 F.3d 466; Hall Holding, 285 F.3d 415; M & R Inv. Co. v. Fitzsimmons, 484 F. Supp. 1041 (D. Nev. 1980). We find the JAA defendants' reimbursement of employee travel expenses, and distribution of a loan to themselves, a clear violation of § 406(a)(1)(A) and (B) and § 406(b)(1) and (2). Furthermore, because the JAA defendants have engaged in prohibited transactions in violation of § 406, it follows that they did not comport with their fiduciary duty required under § 404(a)(1)(A) to act exclusively in the interest of the plan. Therefore, we grant the Secretary summary judgment on counts 6, 7 and 8 of the complaint.

The Secretary alleges that the JAA defendants violated § 404(a)(1)(A) and 406(b)(1) and (2) by paying themselves additional fees from plan accounts dedicated for the payment of plan

insurance premiums. The undisputed facts show that the JAA defendants established bank accounts to pay the premiums on the life insurance contracts of the 136 DB, 498 DB and 218 DB plans, and the premiums on the health and stop-loss benefits of the 136 HW and 498 HW plans. The JAA defendants invoiced these plans in excess of the amount necessary to pay the premiums and pocketed the extra fees, which totaled $1.7 million dollars. It is clear that such conduct violates § 406(a)(1)(A) and (B) as it constitutes self-dealing, using the assets of the plan. It follows that the JAA defendants violated § 404(a)(1)(A) for the reasons cited above. We grant the Secretary summary judgment on counts 4, 5, 15, 16 and 23 of the complaint.

The Secretary alleges that the JAA defendants violated §§ 404(a)(1)(A) and 406(b)(3) by accepting fees from Nationwide or other third parties with which the plans invested. The undisputed facts show that the JAA defendants contracted with Nationwide, and other third parties, to invest plan assets in group annuity contracts which paid commissions to the JAA defendants. This was despite the fact that the administrative agreements JAA entered into with the plans specifically called for plan assets to be invested in no-commission mutual funds. The JAA defendants misrepresented to the plans how the plan assets were being invested. Linder also caused a JAA employee to forge the name of a plan trustee on the East Central Pension Plan's variable group annuity contract with Nationwide that designated Liz/Mar as the recipient of commissions under the contract. They covered up the fact that the JAA defendants and Liz/Mar were receiving commissions by forwarding the investment statements directly to Linder and creating false and fraudulent reports and statements to give to the plans. In addition, Linder, without the knowledge of plan trustees or other fiduciaries, signed forms authorizing the payment of brokerage referral fees to Liz/Mar in connection with certain plans' investments with LaSalle Street Securities and Inter Securities. The JAA

defendants received over $7.9 million in undisclosed fees and other payments, in addition to the $4.6 million in fees they received from the plans pursuant to their consulting contracts. This conduct violates § 406(b)(3)'s prohibition against receipt of consideration for one's own personal account from any party dealing with the plan. Thus, it also violates §404(a)(1)(A).

The Secretary further alleges that Linder violated ERISA § 405(a)(1) by knowingly participating in Kisting's fiduciary breach. Section 405 imposes liability on a co-fiduciary if he knew about the fiduciary's breach and did nothing to remedy it. Jenkins v. Yager, 444 F.3d 916, 925 (7th Cir. 2006). We have found that Kisting breached his fiduciary duty by accepting the motorcycle. Linder was convicted for giving Kisting the motorcycle, making him knowledgeable of the breach. Thus, Linder is liable under § 405(a)(1) for knowingly participating in Kisting's fiduciary breach. We grant the Secretary summary judgment on counts 1-3, 9, 10, 12-14,17, 18, 20, and 21 of the complaint.[11]


Damages

The Secretary seeks a permanent injunction prohibiting Kisting and the JAA defendants from violating ERISA, removing them from any positions they may now hold with respect to the plans, and enjoining them from serving as fiduciaries of, or as service providers to, any ERISA-covered employee benefit plan. The Secretary further seeks the restoration of the loss to the plans and the disgorgement of profits from both Kisting and the JAA defendants.

ERISA § 409(a) provides:

---

[11]We believe, based on the content of count 22, that plaintiff's failure to seek summary judgment on this count was an oversight. However, we cannot grant plaintiff summary judgment *sua sponte* without giving defendants notice and an opportunity to respond. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006). We adhere to this despite the fact that the JAA defendants have chosen not to respond to any count in the Secretary's current motion.

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Under this statute, the JAA defendants must return all moneys lost by the plans as a result of JAA's breach of fiduciary duties. We begin with the fees that the JAA defendants inappropriately caused Nationwide, United of Omaha and Pan-American to pay. It was the practice of Nationwide to deduct money from the plan participant accounts in order to pay JAA commissions, fees, and bonuses, thereby reducing the amount of money available for investment. Similarly, as declared by relevant employees of United of Omaha and Pan American, their payment of fees to the JAA defendants reduced the amount of money in the plans available for investment. Thus, the JAA defendants are liable to restore the money lost from these plans because of these fees.

Nationwide also made Pinnacle Payments to JAA for all plans, including ones not named in the Secretary's complaint, totaling $30,570.69. The JAA defendants will be liable for this total amount unless they can produce evidence apportioning the percentage of those fees attributable to plan investments made by the plans involved in this suit. Leigh, 727 F.2d at 138-39 (burden is on defendants to show which profits are attributable to investments made outside of the plans and all doubt is resolved in favor of plaintiffs). Under the same rationale, the JAA defendants are liable for the total amount of fees paid by LaSalle Street Securities and Inter Securities, unless they can apportion the percentages. The JAA defendants are liable for these fees, even though some of the fees were paid to Liz/Mar and not to JAA, because it was JAA and Linder that entered into contracts with these third parties which resulted in fees to

the plans.

Furthermore, the JAA defendants are liable for any profits they made as a result of entering into these contracts, besides the fees, even if it cannot be shown that those profits caused plan loss. The language of § 409 "permits recovery of a fiduciary's profits [ ] where there is a causal connection between the use of the plan assets and the profits made by" the fiduciary. Leigh v. Engle, 727 F.2d 113, 137 (7th Cir. 1984). The purpose of disgorgement of profits is to deter similar imprudent or illegal conduct in the future. Brock v. Robbins, 830 F.2d 640, 647(7th Cir. 1987). Thus, even though Nationwide has reimbursed a portion of the fees to some of the plans, the JAA defendants are still liable for those fees because they are causally connected to the use of plan assets (i.e. they were incurred through certain investment strategies), and because JAA profited from the commissions. Further, the JAA defendants are liable for the travel and expense reimbursements they paid themselves without trustee approval. Finally, the JAA defendants are liable for the loan they made to themselves, to the extent that it has not already been repaid.[12]

The Secretary is also entitled to prejudgment interest. There is a presumption in favor of prejudgment interest awards in ERISA cases. Fritcher v. Health Care Services Corp., 301 F.3d 811, 820 (7th Cir. 2002). Whether or not the court awards prejudgment interest is a question of fairness. Id. We agree with the Secretary that prejudgement interest is warranted in this case, given the above-noted conduct. The Secretary proposes that we use the federal tax overpayment rate under 26 U.S.C. § 6621 as the calculable rate of interest. While the Seventh Circuit has suggested that courts use the prime rate when calculating prejudgment interest, it has stated that this suggestion is not intended to "straightjacket the district judges,"

---

[12]In their answer, the JAA defendants stated that the loan had since been repaid to the plan.

but to prevent courts from "setting prejudgement interest rates too low by neglecting the risk, often non-trivial, of default." <u>Gorenstein Enterprises, Inc. v. Quality Care-USA Inc.</u>, 874 F.2d 431, 437 (7th Cir. 1989). The Secretary has suggested the rate under 26 U.S.C. § 6621, and we agree it is appropriate. The Secretary also seeks daily compounding of the interest. Whether the interest awarded should be compounded, and how so, is within the discretion of the trial court. *Id.* We agree that, under the egregious circumstances of this case, daily compounding is appropriate. We request the Secretary to recalculate the interest based on the date of judgment, and submit it to the court along with the total amount of damages that the JAA defendants are liable for, based on the foregoing.

The Secretary also seeks disgorgement of Kisting in the amount of the value of the motorcycle at the time Kisting received it. We agree that disgorgement is appropriate. While the <u>Mira</u> court held that monetary damages are not recoverable where no harm to the plan is shown, it is distinguishable because here we found that Kisting breached the duty of loyalty. <u>Brock</u> found that monetary damages were not available absent harm to the plan <u>or</u> evidence of self-dealing. 830 F.2d at 647. Here, Kisting's receipt of the motorcycle constitutes self-dealing and thus he is liable for the motorcycle's value.

Kisting argues that he has already restored any profits to the plan because, as part of his criminal sentence, he was required to pay a fine equal to the current value of the motorcycle at the time of sentencing. The Secretary is correct in arguing that this is insufficient. Such fines go to the government and not the plan itself. Thus Kisting must restore the value of the motorcycle to the plan.

A permanent injunction may be an appropriate remedy under ERISA § 409, where individuals are found to have participated in egregious self-dealing or other serious

misconduct. <u>Beck v. Levering</u>, 947 F.2d 639, 641 (2d Cir. 1991); <u>Reich v. Lancaster</u>, 55 F.3d 1034, 1054 (5th Cir. 1995). The Seventh Circuit has also held injunctive relief appropriate for "penalizing an honest, but imprudent trustee whose actions do not result in a loss to the fund." <u>Brock</u>, 830 F.2d at 647. The policies underlying the enactment of ERISA permit the awarding of an injunction against both the JAA defendants and Kisting. As part of his criminal sentence, Kisting is prevented from participating in his union in any position during the pendency of his supervised release. He has already been removed from his position as a fiduciary. We grant the Secretary a permanent injunction prohibiting Kisting from violating ERISA and from serving as a fiduciary of any ERISA-covered employee benefit plan. We further grant the Secretary a permanent injunction against the JAA defendants, prohibiting them from violating ERISA, removing them from any position they still retain with respect to the plans, and from serving as fiduciaries of, or service providers to, any ERISA-covered plan.

## CONCLUSION

For the foregoing reasons, the Secretary's motion for partial summary judgment is granted as to counts 1-10, 12-21 and 23. It is denied as to count 11. Kisting's motion for discovery is denied. Schreier's motion for discovery is granted to a limited extent. We request that the Secretary prepare a draft order in accordance with this opinion.

James B. Moran
JAMES B. MORAN
Senior Judge, U. S. District Court

_May 31_, 2007.